[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' TERMINATION OF PARENTAL RIGHTS
The Commissioner of the Department of Children and Families (hereafter Commissioner or DCF) has filed a petition seeking to terminate the parental rights of Stacie H. and Robert M. to their child, Jaylayah M. The petition is predicated upon the following grounds: 1) abandonment; 2) failure of the parents to rehabilitate after a prior court finding of their having neglected their child; and 3) the absence of a parent-child relationship.
 I. Background Information
History of Prior Cases
Respondent Stacie H. has had a long history of a substantial addiction to alcohol which has compromised her ability to care for her children. At all times material Stacie H. has been the custodial parent of minor Jaylayah as well as of her two other children who are not in her care. Stacie H.'s two other children who are not in her care are Damien M., born on August 1993, and Robert M., born on July 1996. The legal custody of minor Damien was transferred from Stacie H. to DCF on December 7, 1999, by the Superior Court upon an adjudication of parental neglect. By CT Page 6492 order of the Probate Court on December 16, 1999, the legal custody of minor Robert M, Jr. was transferred to his maternal aunt.
Respondent Robert M. is the father of two children, Robert M, Jr. and Jaylayah M. As stated earlier, by virtue of an order of the Probate Court minor Robert M., Jr. is in the custody of his maternal aunt. Respondent Robert M. has a long criminal history, a long history of substance abuse, and a history of domestic violence.
 II. The Petitions re' Jaylayah M.
The court now shall focus its attention specifically to Jaylayah M. First the court shall review events that led to the filing of the petition by DCF which alleged that Jaylayah M. was neglected by her parents, and then the court shall address the Petition to Terminate Parental Rights.
A. The Neglect Petition
Jaylayah M. was born on September 1999, at the Hospital of St. Raphael. Shortly after her birth and while her mother was in the hospital, DCF took temporary custody of Jaylayah pursuant to its authority under Conn. Gen. Stat. Sec. 17a-101g (c) and (d) to safeguard a child for 96 hours when the agency has probable cause to believe that a child is at imminent risk of harm. The taking was based upon the findings by DCF that 1) Stacie H. has a long history of abuse of alcohol without treatment, 2) she was homeless at Jaylayah M.'s birth, with minimal supplies for her care, and 3) the child's father was not a resource for her.
A Neglect Petition was filed by the Commissioner on September 29, 1999. In the Neglect Petition the Commissioner alleged that Jaylayah M. was neglected for essentially the same reasons as for the 96 hour administrative hold, and for the reason that Robert M., the child's father, is an alleged substance abuser and is not a resource to the child. Pursuant to credible evidence presented to it, the Court on November 8, 1999, in connection with the Neglect Petition, found that minor Jaylayah M. would be in immediate physical danger if allowed to remain with her parents, and issued an Order of Temporary Custody, temporarily transferring the legal and physical custody of Jaylayah M. to DCF.
 Disposition of Neglect Petition: Commitment; Specific Steps
Thereafter, upon Stacie H's plea of nolo contendere, and upon Robert M. through counsel standing silent, the Superior Court on December 7, CT Page 6493 1999, adjudicated Jaylayah as neglected, and committed her to the legal custody of DCF for a twelve-month period.[1] The court accepted Stacie H's written promises, known as "specific steps," to improve her condition preparatory to seeking Jaylayah M's return, and adopted these promises as a court order.
By virtue of the specific steps, incorporated by the court in the disposition in the Neglect proceeding on December 7, 1999, Stacie H. committed to the following: 1) keeping her whereabouts known to DCF; 2) keeping all appointments set by or with DCF; 3) undergoing substance abuse assessment and treatment; and not abusing substances; 4) visiting with Jaylayah as often as permitted by DCF; 5) participating in individual, family and domestic violence counseling; 6) securing and maintaining adequate housing and income; and 7) no involvement with the criminal justice system
Although Robert M. was not present at the adjudication on December 7, 1999, and did not sign specific steps, DCF informed him on October 8, 1999, as to the essential steps that each parent needed take to facilitate Jaylayah M.'s return. The steps for Robert M. were essentially, if not identically the ones applicable to Stacie H.
B. The Petition to Terminate Parental Rights
A Petition to Terminate Parental Rights was filed by the Commissioner on February 28, 2001. The filing of this petition was based upon the Commissioner's conclusion that Stacie H. and Robert M. were not complying with the specific steps necessary to facilitate Jaylayah's return, and that Jaylayah's best interest would be served by terminating her parents' parental rights.
As stated earlier, the Commissioner cited three grounds as supporting its Petition to Terminate Parental Rights; namely, 1) abandonment; 2) the parents' failure to rehabilitate after a prior court finding that they have neglected the child; and 3) the absence of a parent-child relationship.
 Two-Phase Proceeding: Adjudication Disposition
Our appellate court has stated that "[a] hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under General Statutes (Rev. to 1999) § 17a-112 (c), now (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional CT Page 6494 phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) In re Gary B., 66 Conn. App. 286,289-90, ___ A.2d ___ (2001).
The court shall now review the facts of each ground of the petition as they existed prior to February 28, 2001 — the date of the filing of the Petition to Terminate Parental Right. The first ground is that of abandonment.
 1. Abandonment
Abandonment is defined by our child protection statute as a parent having ". . . failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." Conn. Gen. Stat. Sec.17a-112 (j)(3)(A). Both Stacie H. and Robert M. deny the Commissioner's claim that they have abandoned Jaylayah M. Each respondent shall be reviewed separately.
a. The issue of alleged Abandonment by Respondent Stacie H.
Respondent Stacie H. asserts that her numerous supervised visits with Jaylayah M. after the latter's commitment to DCF demonstrate that she has not abandoned Jaylayah M., but that she has demonstrated her interest in reuniting with her daughter. In this respect Stacie H. points out that the testimony of DCF social workers in this case echo her position. The court finds based upon such testimony that DCF arranged weekly supervised visits between Stacie H. and Jaylayah M. from about November of 1999 until sometime in September of 2000. A few of the visits were cancelled by Stacie H. or by DCF. of the remaining 39 scheduled visits, Stacie H. kept 27, and was a "no show" for 12. The evidence discloses that Stacie H. comported herself appropriately during her visits.
b. The Issue of alleged Abandonment by Respondent Robert M.
In asserting his denial of the allegation of abandonment, Respondent Robert M. points out that early on he offered his sister as a resource to care for Jaylayah; that his allowing Stacie H. to raise Jaylayah is not abandonment; that Stacie H. caused the problem of neglect and she should be the one to remedy it; and that he attended several of the supervised visits with his daughter. DCF responds in part by maintaining that Stacie H's having prior physical custody of Jaylayah, as well as Robert M's attending several supervised visits does not cure his legal abandonment.
The court finds that Robert M. was present in court on October 8, 1999 — the date of the confirmation by the court of the Order of CT Page 6495 Temporary Custody in DCF — and that on that day DCF informed him of the specific steps that he should take for the facilitation of Jaylayah' s return to her parents. Those specific steps included substance abuse evaluation and treatment, obtaining employment and housing, visiting with Jaylayah M. as often as DCF permits, and no further involvement with the criminal justice system.
The court finds that Robert M. visited Jaylayah M. minimally at best and that he informed DCF that he did not visit often because he should not be required to visit her at the DCF facility. The court finds that he did not request visits while he was incarcerated. The court further finds that he did not send cards nor letters to Jaylayah. M. The court finds that there is no evidence that he tendered any financial support for Jaylayah M. The court further finds that Robert M's offering his sister as a resource is not tantamount to offering himself as a parent.
 Decision Re' Abandonment
The court finds that the visitation of Jaylayah M. by Stacie H. demonstrated that she did not fail to ". . . maintain a reasonable degree of interest, concern or responsibility as to the welfare . . ." of her child. Accordingly, the court finds that she did not abandoned Jaylayah. However, the court finds that Robert M. did not demonstrate such a degree of interest. Accordingly, the court finds that Robert M.'s actions demonstrate his legal abandonment of Jaylayah M.
 2. Failure to Rehabilitate after Prior Adjudication of Neglect
The Commissioner has alleged as another ground for termination that the parents have failed to rehabilitate themselves after their child has been adjudicated as neglected in a prior proceeding. This ground for termination, based upon a prior adjudication of neglect and a failure of personal rehabilitation, is clearly articulated in our statutes. Conn. Gen. Stat. § 17a-112 (j)(3)(B) states in part that
 [t]he Superior Court . . . may grant a petition [to terminate parental rights] if it finds by clear and convincing evidence that . . . the child . . . has been found by the Superior Court . . . to have been neglected . . . in a prior proceeding . . . and the parent of such child has been provided with specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation
as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child."(Emphasis added.) CT Page 6496
As stated earlier, the filing of this termination of parental rights case was preceded by a prior adjudication on December 7, 1999, based upon the Neglect Petition, that Jaylayah M. was neglected. The disposition in the Neglect case was commitment of the legal custody of Jaylayah M. to DCF for her safe keeping. Furthermore, there was an articulation of the specific steps, which if undertaken by Jaylayah M.'s parents would facilitate her return to their legal custody.
A. Review of Specific Steps
Respondent Stacie H. is a twenty-eight year old woman who has a history of alcohol abuse and a history of not having stable housing. Also she has a criminal history. Respondent Robert M. is a thirty-one year old man who has a history of substance abuse, and unstable income. Robert M also has a criminal history. In addition, Stacie H. and Robert M. have a history of domestic violence involving each other.
The most important of the Specific Steps approved by the court at the adjudication of neglect on December 7, 1999 were the following: 1) substance abuse evaluation and treatment; 2) visiting with Jaylayah as often as DCF permits; 3) participating in individual, family and domestic violence counseling; 4) securing and maintaining adequate housing and income; and 5) no involvement with the criminal justice system.
B. Review of Compliance with Specific Steps
 1. Review of Respondent Stacie H's Efforts
Because Stacie H's involvement with DCF dates back to 1997 a review of her efforts to combat substance abuse and to obtain counseling precedes her signing of the specific steps on December 7, 1999. The following is a listing of the agencies to which she has been referred and of the attendant outcomes through 1999.
Agency Dates Reasons Disposition
 Project Moore May 1997 substance abuse Incomplete treatment domestic violence
 Milford Mental August 1997 evaluation Incomplete follow- treatment through
Advance CT Page 6497 Behavioral Health September 18, substance abuse Non-compliance 1998
Apt Foundation September 1998 Substance Abuse Non-completion
 Elm City February 1999 Substance Abuse Non-completion Program
 Connection October 1999 Anger Management; Completed all Parenting; except after-care Substance Abuse
 Hill Health Center 1999 Prenatal Care Inconsistent
 Stacie H's Entry into Drug Session Alternative Incarceration Program
On July 28, 2000 DCF arranged for respondent Stacie H to be interviewed at Addiction Prevention Treatment (APT) Central Treatment Unit to assess her substance abuse problem. However, DCF later was informed that Stacie had been arrested on July 18, 2000 and that she was not available for the interview.
In August of 2000, Stacie H. faced incarceration for violation of court ordered probation for a prior conviction on the charges of breach of the peace and of committing a public disturbance. In September of 2000, the court allowed her to enter an alternative-to-incarceration program known as the Drug Session of the New Haven Superior Court. The program has two components; namely, drug detoxification with prevention of drug use, and assisting participants with developing skills for obtaining employment and housing. Under the terms of the Drug Session program completion of the program would result in a dismissal of her pending criminal charges, and a non-completion would result in a period of incarceration upon which she agreed when she was accepted into the program.
In the Drug Session Program Stacie H. entered a residential drug treatment program and maintained sobriety for a substantial period of time; however, in February of 2001 she resumed using alcohol. Following a complete relapse in July of 2001, she then was removed from the Drug Session Program and remanded to the Commissioner of the Connecticut Department of Corrections to serve her agreed-upon fifteen-month sentence at the York Corrections Facility.
Prior to the expiration of her fifteen-month sentence, Stacie H was placed by the Department of Corrections in a program outside of CT Page 6498 incarceration known as the Neon Women's and Children's Half-Way House. it is a four-to-eighteen-month residential program designed to provide substance abuse treatment and prevention services, as well as to assist enrollees in developing skills for obtaining housing and employment. When Stacie H. entered the Neon program in November of 2001 she was pregnant by Robert M.
While in the care of Neon, Stacie H receives counseling relative to domestic violence, as and receives parenting education. She is in compliance with program requirements, including receiving counseling for and cessation of substance abuse.
Neon has provided Stacie accommodations in a two bedroom apartment which she shares with another enrollee. Neon can accommodate Stacie and one or more of her children until March 2003. If Stacie H completes the Neon Program the period of incarceration remaining on her sentence will be forgiven. If she does not complete the Neon Program successfully she will be returned to incarceration to complete the remainder of her sentence.
 b. Review of Robert M.'s Efforts
The court finds that Robert M. has not complied with the terms of the specific steps, although on October 8, 1999 — the date on which the Order of Temporary Custody was confirmed in Court, DCF through one of its social workers reviewed with Robert M the specific steps approved by the court.
One of the specific steps required that neither parent have any further involvement with the criminal justice system. Evidence submitted in this case shows that after being informed of the specific steps, Robert M. was sentenced to one year in jail, one year incarceration suspended and two-years of conditional discharge on criminal assault charges for offenses which he committed on December 24, 1999. The evidence also discloses that Robert M. was sentenced on August 1, 2000, to a term of incarceration and probation for criminal offenses which he caused on July 17, 2000.
In June of 1991 Dr. Nancy Randall conducted a psychological evaluation of the parents individually and an interactional examination of them with Jaylayah M. During the examination Robert M. informed the psychologist that in 1997 he attended an inpatient drug treatment program pursuant to a court order and at that time he received counseling and that he has had no other counseling or therapy. He acknowledged to the psychologist that he recalled receiving the court ordered expectations in this case. Also he stated to the psychologist that he did not follow through with the CT Page 6499 specific steps because in his words: "I didn't have to. I didn't need it."
The examination of Robert M. by the psychologist revealed a significant likelihood of his having a substance abuse problem that, if not treated properly, will affect him in the future.
 3. No-ongoing Parent-Child Relationship
The third ground of the Petition to Terminate Parental Rights is the claimed absence of an "Ongoing Parent-Child Relationship." The legislature has defined "no ongoing parent-child relationship" as meaning
 . . . the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child.
Conn. Gen. Stat. Sec. 17a-112 (j)(3)(D).
The court finds from the testimony in this case that Jaylayah has spent her entire young life in foster care, and that she considers her foster parents to be her actual mother and father. The court finds that the psychological evaluation of Dr. Nancy Randall reveals that there is no significant relationship that Jaylayah M. has with either of her parents. The court further finds that there is no parent-child relationship; that although the parents have made efforts to address their problems, they are not now able to provide a stable home for Jaylayah; and that allowing "further time for the establishment or reestablishment of [a] parent-child relationship would be detrimental to the best interest of [Jaylayah]."
 Summary of Adjudicatory Findings
This court has found that the Commissioner has proved the following adjudicatory grounds by clear and convincing evidence: 1) that only Robert M has legally abandoned Jaylayah; 2) that Jaylayah M.'s parents have failed to rehabilitate after a prior court finding of their having neglected her; and 3) that there is no parent-child relationship between Robert M, Stacie H and Jaylayah M.
 Phase Two: Dispositional Findings
CT Page 6500
Having found that the Commissioner has proved as to both parents at least two of the grounds set out in her Petition to Terminate Parental Rights, In re Mariah S., 61 Conn. App. 248, 763 A.2d 71, (2000); cert. den. 255 Conn. 934, (one ground sufficient), the court shall now turn its attention to the dispositional findings in order to determine whether termination of parental rights is in Jaylayah M's best interest.
 Prior Judicial Finding that Efforts at Reunification not appropriate
In turning to the dispositional findings, it must be noted that on October 24, 2000, the court heard the Commissioner's Motion for Review of Permanency Plan, and on that day approved the Commissioner's plan of resolving Jaylayah's legal status through filing and prosecuting a Petition for Termination of Parental Rights. On that day the court found that continuing efforts to reunify Jaylayah M. with her mother and/or her father were not appropriate.
Notwithstanding the finding that continuing efforts at rehabilitation were not required from October 24, 2000, forward, the court shall review each statutory factors as set out below. Conn. Gen. Stat. Sec. 17a-112
(k).
 1. Timeliness, Nature and Extent of Services offered by DCF for Reunification of Family
DCF provide substantial services to Stacie H.(See part II-B-2 of this Memorandum of Decision) Those services included case management, and offers of services to address her needs for counseling and drug treatment.
Respondent Robert M. received a 30-day bus pass from DCF to facilitate his visiting Jaylayah at its offices. Also DCF referred him for a substance abuse evaluation at the APT Foundation on January 11, 2000. Robert M did not attend the evaluation, and he has stated clearly that did not feel it was necessary that he comply with the specific steps.
 2. Whether DCF has made reasonable Efforts to reunite the Family
The court finds that DCF has made reasonable efforts to reunite the family. The efforts made by DCF are articulated in this Memorandum of Decision.
 3. The Terms of any applicable Court Order agreed upon by the Agency and Parent, and the Extent to which there has been CT Page 6501 Compliance with the Order
On December 7, 1999, Stacie H. signed specific steps, incorporated as a court order, which obligated her to 1) keep her whereabouts known to DCF; 2) keep all appointments set by or with DCF; 3) submit to substance abuse assessment and treatment; 4) visit with Jaylayah as often as permitted by DCF; 5) participate in individual, family and domestic violence counseling; 6) secure and maintain adequate housing and income; and 7) no further involvement with the criminal justice system. DCF informed Robert M. as to the essential steps which he would need to take in order to prepare himself to seek Jaylayah's return. The essential steps were the same as the ones for Stacie H, namely, substance abuse assessment and treatment; counseling; income; adequate housing; and no further involvement with the criminal justice system.
The compliance of Stacie H. and of Robert M. is detailed in the part of this memorandum so entitled.
 4. The Feelings and Emotional Ties of Jaylayah to her Parents
The court finds that there are no child-to-parent emotional ties.
5. The Age of the Child
Jaylayah was born on September 1999. She is two years and approximately eight months of age.
 6. The Efforts made by the Parents to adjust their Circumstances, Conduct or Conditions so as to promote Reunification
Stacie H. has entered several drug treatment programs, and she submitted to counseling from time to time. However, Stacie H. has a history of relapse. Her present abstinence in the Neon Program is commendable. However, it is to be noted that she had other prior periods of sobriety. It is hoped that her current sobriety will be long-lasting.
Robert M. has not submitted himself for substance abuse evaluation and treatment to any significant extent. He has taken the attitude that Stacie H. caused the problem that resulted in this case of child protection for Jaylayah, and it is Stacie H.'s responsibility to fix the problem.
 7. The Extent to which the Parents have been prevented from having a meaningful CT Page 6502 Relationship with their Child
Neither parent has been prevented from having a meaningful relationship with Jaylayah. DCF has made every reasonable effort to promote an opportunity for the parents to have such a relationship with her.
 III. Order Terminating Parental Rights
For the foregoing reasons, the court finds by clear and convincing evidence that termination of the parental rights of respondents Stacie H. and Robert M. as to minor Jaylayah M. is in her best interest. Accordingly, the court hereby so terminates their parental rights.
 IV. Order appointing Statutory Parent
The court hereby appoints the Commissioner of the Department of Children and Families as the statutory parent of minor Jaylayah M., and orders the Commissioner to file the appropriate reports, required by law, which show her efforts to effect permanent placement.
__________________, Judge Clarance J. Jones